UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA GROSHANS, <br><br> Plaintiff, <br><br> v. <br><br> CARLOS DEL TORO, <br><br> Defendant. | Civil Action No. 21-cv-3004 (TSC) |

## MEMORANDUM OPINION

Plaintiff Barbara Groshans, who has a severe anaphylactic allergy to anything containing alcohol and to diesel fumes, filed this action alleging seven violations of the Rehabilitation Act after a tumultuous employment with the U.S. Department of the Navy that ended in termination. Defendant—the Secretary of the Navy—moved for summary judgment. Having considered the record and the briefing, the court will GRANT Defendant's Motion.

### I.   BACKGROUND

Plaintiff was diagnosed with a potentially fatal allergy to alcohol and diesel fumes while employed with the Navy in 1994. Kletz Letter, Mar. 29, 1994, ECF No. 23-32. Consequently, she was removed from her position as a Contract Specialist with the Navy in September 1994 for physical inability to perform her job duties. Notification of Personnel Action, ECF No. 23-33. From 1994 to 2017, Plaintiff participated in a vocational rehabilitation program. Commonwealth Rehabilitation Letter, ECF No. 23-40. In 2016, Plaintiff's doctor represented that her medical condition had "resolved" and she could return to work "so long as she is not exposed to alcohol and/or diesel fumes." Kletz Letter, July 18, 2016, ECF No. 23-34 at 2.

Plaintiff was then offered, and accepted, a position as a Contract Specialist. Job Offer Letter, ECF No. 23-35; Acceptance/Declination Statement, ECF No. 23-42. Before she began work, Human Resources followed up with Plaintiff's doctor and requested additional information to better understand her allergy and how to best protect her. Eusantos Letter, ECF No. 23-43; Req. for Additional Medical Documentation, ECF No. 30-8. The Navy also asked employees to remove cleaning wipes and hand sanitizer from Plaintiff's vicinity, asked that employees not approach Plaintiff if wearing perfume or cologne, and worked with Plaintiff to create an emergency plan. Dep. of Barbara Groshans, Oct. 27, 2020, ECF No. 23-4 at 29:17–21 ("Oct. 27 Groshans Dep."); Dep. of Christina Clark, ECF No. 30 at 116:10–118:20 ("Clark Dep.").

Despite these precautions, Plaintiff experienced at least 60 workplace-related allergic reactions between July 17, 2017, and September 7, 2018. EEO Investigative Aff., ECF No. 26-8 at 33–50. These reactions occurred "almost every time" Plaintiff was at the office, Oct. 27 Groshans Dep. at 43:21–22, and can be life-threatening. When she is exposed to an allergen, Plaintiff's "heart can stop" or she can "just stop breathing with no precursor to what's going to happen." Dep. of Barbara Groshans, Oct. 15, 2020, at 25:9–12 ("Oct. 15 Groshans Dep."). Plaintiff requested a reasonable accommodation in August 2017, seeking part-time telework. *See* Approval of Req. for Accommodation, Mar. 26, 2018, ECF No. 23-6. The Navy initially approved an alternative accommodation—relocating Plaintiff's office to minimize foot traffic around her and minimize potential exposures—citing concerns about teleworking due to the amount of training Plaintiff needed to complete after her time away from the workforce. Approval of Req. for Accommodation, Oct. 4, 2017, ECF No. 23-37. A few months later, however, the Navy reconsidered, and granted Plaintiff a full-time telework accommodation. Approval of Req. for Accommodation, Mar. 26, 2018.

Plaintiff, however, suffered from performance issues that worsened with full-time telework. Consequently, she received a below expected performance review, Decision on Notice of Proposed Removal, ECF No. 23-13 at 2, as well as a suspension for inattention to duty, attempted timecard falsification, failure to follow IT policy, and lack of candor, Notice of Proposed Ten Day Suspension, ECF No. 23-25; Notice of Decision on Proposed Ten Day Suspension, ECF No. 23-26. Plaintiff's work-related allergic reactions also continued with full-time telework, EEO Investigative Aff. at 33–50, because she was still required to attend occasional meetings at contractor's facilities, visit the Navy Field Representative and other Government field representatives to review procedures used in administering contracts, and attend in-person trainings, Position Requirements Doc., ECF No. 23-20 at 1, 4; Approval of Req. for Accommodation, Mar. 26, 2018.

Eventually, the Navy consulted with a medical professional who concluded that the Navy could not fully protect Plaintiff from serious medical complications, even with full-time telework. Lakhani Letter, ECF No. 23-27. The Navy revoked Plaintiff's accommodation, placed her on administrative leave, and offered her consideration for reassignment. Denial of Requested Accommodation, ECF No. 23-15. The reassignment search, however, did not turn up any positions in Plaintiff's geographical area that could accommodate her medical condition. *See* Reassignment Search Emails, ECF No. 23-28. Consequently, Plaintiff was removed from her position on January 17, 2020. Decision on Notice of Proposed Removal, ECF No. 23-13.

Plaintiff filed this action on November 12, 2021, alleging seven violations of the Rehabilitation Act. Compl., ECF No. 1 ¶¶ 102–29. Defendant moved for summary judgment on all counts.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). The party seeking summary judgment bears the burden to provide evidence showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.     ANALYSIS

### A.     Count 1—Failure to Accommodate

In Count 1, Plaintiff claims that Defendant violated the Rehabilitation Act by failing to reasonably accommodate her disability. *See* 29 U.S.C. § 794(a); *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014). To survive summary judgment, Plaintiff must produce "sufficient evidence to allow a reasonable jury to conclude that (i) she was disabled . . . (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Solomon*, 763 F.3d at 9 (internal citations omitted). Defendant concedes that Plaintiff was disabled and that it had notice of her disability, but contends that Plaintiff was unable to perform the essential functions of her job and the Navy granted her a reasonable accommodation—full-time telework. Because the court concludes that Plaintiff was unable to perform the essential functions of her job even with her desired

accommodation, it need not reach Defendant's argument that it did not deny her a reasonable accommodation.

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). To determine which job duties are fundamental, courts consider the employer's "judgment as to which functions are essential," "job descriptions," "amount of time spent on the job performing the function," "consequences of not requiring" the employee to perform the function, and work experience of past and current employees. *Id.* § 1630.2(n)(2); *see Taylor v. Rice*, 451 F.3d 898, 906 (D.C. Cir. 2006). In *Doak v. Johnson*, 798 F.3d 1096, 1105–06, for example, the D.C. Circuit affirmed the district court's grant of summary judgment to the U.S. Coast Guard, holding that it "proffered substantial evidence" that plaintiff's desired accommodation—flexible work hours and a later start time—would have made her unable to "perform an essential function of her job: being present in the office to participate in interactive, on-site meetings during normal business hours and on a regular basis." The Court noted that several memoranda and notes in the record indicated that plaintiff's job included "daily meetings" and interaction with project staff, which required that she be "in the office during normal work hours." *Id.*

Defendant has established that Plaintiff could not perform an essential function because of her disability. First, occasionally entering her workplace or other public spaces to meet with other government employees or attend trainings was an essential function of Plaintiff's job. The written description of Plaintiff's position-specific requirements included attending meetings at contractor's facilities regarding planning and coordination of contracts, visiting the Navy Field Representative and other government field representatives to review the procedures used in administering contracts, and attending in-person trainings to obtain certification. Position

Requirements Doc. at 1, 4; *see* Certification Standards & Core Plus Development Guide, ECF No. 23-21 (providing that only some training courses were available virtually). And in granting Plaintiff a remote work accommodation, the Navy explained that "there may be times" when Plaintiff would be "required to report to the workplace or an off-site facility for training, to attend meetings, retrieve items, update equipment or tend to other ad hoc matters that may arise." Approval of Req. for Accommodation, Mar. 26, 2018.

Second, Plaintiff was unable to perform this essential function because of her disability. Plaintiff thoroughly documented 60 exposures at the workplace between July 17, 2017, and September 7, 2018—including 18 exposures after her remote-work accommodation was granted on March 26, 2018. EEO Investigative Aff. at 33–50. At her deposition, Plaintiff explained that "almost every time" she was at the office, she experienced anaphylaxis. Oct. 27 Groshans Dep. at 43:21–22. Similar reactions occurred in other public spaces as well. When Plaintiff attended in-person training, she experienced anaphylaxis and required paramedic attention. EEO Investigative Aff. at 4–5; Oct. 27 Groshans Dep. at 11:1–12:5. Plaintiff's condition also prevents her from flying on airplanes or appearing in crowded public spaces. EEO Investigative Aff. at 5. When Plaintiff experiences anaphylaxis, she is not only unable to perform her job, but her life is at risk. Kletz Letter, Feb. 22, 2018, ECF No. 23-5 at 1–2; *see* Oct. 15 Groshans Dep. at 25:9–12.

Plaintiff did not respond to Defendant's argument that she was unable to perform an essential function of her job even with a remote-work accommodation. *See* Pl.'s Mem. in Opp'n to Mot. for Summ. J., ECF No. 26 at 15–17 ("Opp'n") (failing to address the essential functions of Plaintiff's job in arguing that the Navy failed to accommodate her). Where, as here, "a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Wannall v. Honeywell, Inc.*, 775 F.3d

425, 428 (D.C. Cir. 2014). Because Plaintiff appears to have conceded the third requirement, the court will grant Defendant summary judgment on Count 1.

**B.      Counts 2, 3, 4, and 5—Discrimination and Retaliation**

Under the Rehabilitation Act, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *see* 42 U.S.C. § 2000e-16(a). Similarly, to "prove retaliation, the plaintiff generally must establish" "(i) a materially adverse action (ii) because . . she brought or threatened to bring a discrimination claim." *Baloch*, 550 F.3d at 1198; *see* 42 U.S.C. § 2000e-3(a). Defendant does not contest that Plaintiff was disabled, or that she suffered an adverse action—termination from her position. Rather, Defendant argues that the Navy did not terminate Plaintiff *because of* her disability or her protected activity, but rather because of her poor performance and because it concluded she was unable to perform the essential functions of her job.

Counts 2 through 5 are governed by the *McDonnell Douglas* burden-shifting framework. *See Solomon*, 763 F.3d at 14 (retaliation); *Baloch*, 550 F.3d at 1197 & n.2 (discrimination). First, a plaintiff must establish a prima facie case of discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Second, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *Id.* Finally, the burden reverts to the plaintiff to demonstrate that the employer's nondiscriminatory reason is pretext. *Id.* at 804. If "the employee has suffered an adverse employment action and the employer has asserted a legitimate, non-discriminatory reason for the action," the court need only determine "whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not that actual reason and that

the employer intentionally discriminated against the employee' on an impermissible ground." *Baloch*, 550 F.3d at 1197–98 & n.2 (citation omitted). In *Baloch*, for example, the D.C. Circuit held that plaintiff did not proffer sufficient evidence to overcome summary judgment because he "produced no direct evidence of discriminatory animus by the decisionmaker and failed to produce any other evidence" to discredit[] the underlying reason" for the adverse action. *Id.* at 1198.

The Navy asserted a nondiscriminatory reason for terminating Plaintiff: her poor performance and inability to fulfill the duties of her position. Before termination, Plaintiff received a below expected performance review, Decision on Notice of Proposed Removal at 2, as well as a brief suspension for inattention to duty, attempted timecard falsification, failure to follow IT policy, and lack of candor, Notice of Proposed Ten Day Suspension; Notice of Decision on Proposed Ten Day Suspension. Her supervisor explained that "there was a consistent pattern of deadlines being missed, of work not being completed, or she was given feedback on corrections that needed to be made on her work and she either ignored them or continued to make repeated mistakes." Clark Dep., ECF No. 23-11 at 70:12–17; *accord* Decision on Notice of Proposed Removal at 2–3. Moreover, Plaintiff "showed little improvement or substantive effort to increase her technical skills and meet mission requirements." Decision on Notice of Proposed Removal at 3; *see* Notice of Decision on Proposed Ten Day Suspension at 2 ("[I]t does not appear that you properly value the importance of meeting deadlines and taking responsibility for the work assigned to you."). Consequently, when asked why Plaintiff was terminated, the deciding official—Admiral Behning—explained that there were "performance issues" that "prevented teleworking from being an effective accommodation." Dep. of Admiral Mark Behning, ECF No. 23-29 at 55:19–56:4; *see also id.*

at 56:16–20 ("[W]hen [Plaintiff] was teleworking, she also had problems with both use of the software that is used in the contracting job, as well as IT issues that made an ineffective reasonable accommodation.").

Plaintiff has not produced sufficient evidence undermining the Navy's stated nondiscriminatory justification for terminating her employment to survive summary judgment. First, she argues that three of the charges that led to her suspension were false. Opp'n at 18–19. But Plaintiff points to no evidence supporting this assertion. She cites her response to the Navy's notice of proposed suspension, but the Navy reviewed and considered that response when it issued its decision on proposed suspension. The Navy explained, for example, that Plaintiff was charged with inattention to duty because she missed deadlines even after being granted extensions due to illness, and work had to be reassigned to other employees to meet customer expectations; that she attempted to have her timecard changed even after being "told multiple times" by her supervisor that she was not allowed to do so; and that her failures to follow IT policy were "excessive," especially considering her recent training on IT policy. Notice of Decision on Proposed Ten-Day Suspension at 1–2. Even with the benefit of discovery, Plaintiff has failed to identify any evidence that undermines any of the Navy's justifications for suspending her.

Second, Plaintiff contends that her supervisor departed from established practice by failing to take steps to protect her from exposure in the workplace, demonstrating that her suspension was pretextual. Opp'n at 19–21. The record does not support that assertion, either. The Navy took several steps to minimize Plaintiff's exposure in the workplace, including asking employees to remove cleaning wipes and hand sanitizer from Plaintiff's vicinity, asking that they not approach Plaintiff if wearing perfume or cologne, creating plans to address Plaintiff's safety

given the medical information they had at the time, and asking for additional medical information to better understand her needs and protect her health.  Oct. 27 Groshans Dep. at 29:17–21; Eusantos Letter; Clark Dep., ECF No. 30-3 at 116:10–118:20; Req. for Additional Medical Documentation.  The Navy also engaged in the reasonable accommodation process, eventually granting Plaintiff the very accommodation she sought—full-time telework.  Oct. 27 Groshans Dep. at 33–34; Approval of Req. for Accommodation, Mar. 26, 2018; Approval of Req. for Accommodation, Oct. 4, 2017; Req. for Additional Medical Documentation.  Eventually, however, the Navy consulted with a medical professional who advised that it could not fully protect Plaintiff from serious medical complications, Lakhani Letter, and concluded that Plaintiff was not able to perform the essential functions of her job, *see supra* Section III.A.

Finally, Plaintiff claims that her performance was adequate, pointing to her "fully successful" rating in her otherwise poor performance review.  Opp'n at 22–24.  As Defendant explains, however, this "fully successful" Performance Appraisal Quality Rating was used only in evaluating workforce reductions and was not used to evaluate performance.  Decl. of Shateesha Huggins, ECF No. 23-14 ¶¶ 4–5.  Moreover, the "fully successful" rating captured employees who were "not meeting expectations."  *Id.* ¶ 4.  Had Plaintiff been "meeting or exceeding expectations," she would have received an "outstanding" rating.  *Id.*

**C.     Counts 6 and 7—Hostile Work Environment**

In Counts 6 and 7, Plaintiff alleges that the Navy subjected her to a hostile work environment because of her disability and because she engaged in protected activity.  Compl. ¶¶ 122–29.  To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

work environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). To determine whether a work environment is hostile, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* In *Baloch*, for example, the D.C. Circuit affirmed the district court's grant of summary judgment to the employer, concluding that "none of the comments or actions directed at Baloch expressly focused on his" protected characteristic; he did not experience "tangible workplace consequences, whether financial, physical, or professional"; and the evidence did not reflect "pervasive and constant abuse," but rather, sporadic "verbal clashes with his supervisor." *Id.*

Courts in this district have repeatedly held that allegations of unreasonable deadlines, lack of access to training, and other work-related actions by supervisors do not meet the "severe or pervasive" threshold as a matter of law. *See, e.g.*, *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 36–37 (D.D.C. 2019) (tight deadlines, denial of training, and criticism did not create a hostile work environment); *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011) (attempting to manufacture performance issues for male employees to force them to leave the unit were "work-related actions by supervisors" insufficient to create a hostile work environment); *see also, e.g.*, *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *Swann v. Off. of Architect of the Capitol*, 73 F. Supp. 3d 20, 32 (D.D.C. 2014).

Applying this framework, Defendant is entitled to summary judgment on Counts 6 and 7 because Plaintiff has not identified sufficient evidence of severe or pervasive discriminatory conduct creating a hostile work environment. First, the court has already determined that there is no genuine dispute of material fact regarding Plaintiff's discrimination and retaliation claims. *See supra* Sections III.A–B. Consequently, the court will not consider those allegations as

evidence of a discriminatory hostile work environment.  *E.g.*, *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 164 (D.D.C. 2007) (citation omitted) (plaintiff cannot show a hostile work environment based on acts the court has already found non-discriminatory); *see* Opp'n at 25 (arguing that Plaintiff was exposed to a hostile work environment because she was not provided a reasonable accommodation, was suspended, and was terminated from her position).  Second, Plaintiff's allegations that the Navy gave her unreasonable deadlines, denied her access to training, and pressured her to resign are work-related supervisor actions insufficient to meet the "severe or pervasive" threshold.  *See, e.g.*, *Jimenez*, 395 F. Supp. 3d at 36–37; *Wade*, 780 F. Supp. 2d at 19 (supervisors "attempting to manufacture performance issues for male employees to force them to leave the unit" constituted "work-related actions by supervisors" that were not "objectively offensive").

Finally, Plaintiff's allegations that the Navy intentionally exposed her to her allergens on nearly 60 occasions and ridiculed her are also insufficient to survive summary judgment.  For one thing, there is nothing in the record to support that contention.  Plaintiff cites her EEO Investigative Affidavit, in which she claimed her supervisor told her in a February 2018 meeting that the Navy would "do nothing to safeguard [her] from alcohol-based substances."  EEO Investigative Aff. at 52.  The record makes clear, however, that the Navy *did* take several steps to protect Plaintiff from her allergens and accommodate her disability, including cautioning other employees about Plaintiff's allergies and granting her full-time telework.  *See supra* Sections III.A–B.  Moreover, Plaintiff claims her supervisor once yelled at her for 15 minutes because she went "over her head" and complained to the Deputy Director about her supervisor.  EEO Investigative Aff. at 22-23; Oct. 27 Groshans Dep. at 85:3–17.  While unprofessional, this one-

time "verbal clash[]" does not arise to the level of "pervasive and constant abuse." *Baloch*, 550 F.3d at 1201. Defendant is therefore entitled to summary judgment on Counts 6 and 7.

## IV. CONCLUSION

For the foregoing reasons, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 23. An Order will accompany this Memorandum Opinion.

Date: September 5, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge